IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHINA CUSTOM MANUFACTURING INC. AND GREENTEC ENGINEERING, LLC,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　　　　　Defendant,<br><br>　　and<br><br>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,<br><br>　　　　　　　Defendant-Intervenor. | Before:  Hon. Stephen Alexander<br>　　　　　　　Vaden, Judge<br><br>Court No. 20-00121 |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFFS'
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

　　　　　　　　　　　　　　　　　　　　Alan H. Price, Esq.
　　　　　　　　　　　　　　　　　　　　Robert E. DeFrancesco, III, Esq.
　　　　　　　　　　　　　　　　　　　　Elizabeth S. Lee, Esq.

　　　　　　　　　　　　　　　　　　　　WILEY REIN LLP
　　　　　　　　　　　　　　　　　　　　1776 K Street, NW
　　　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　　　(202) 719-7000

　　　　　　　　　　　　　　　　　　　　*Counsel for Aluminum Extrusions Fair
　　　　　　　　　　　　　　　　　　　　Trade Committee*

**Dated:  May 5, 2021**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1
II. RULE 56.2 STATEMENT ................................................................................... 1
    A. Administrative Decision Sought to be Reviewed .................................... 1
III. ISSUES PRESENTED AND SUMMARY OF ARGUMENT ........................ 2
IV. ARGUMENT ....................................................................................................... 4
    A. Commerce's Determination That CCM's Rock-It 3.0 Mounts Are Covered by the Scope of the Orders Is Supported by Substantial Evidence and In Accordance With Law .................................................. 4
    B. Commerce's Determination That CCM's Rock-It 3.0 Mounts Do Not Qualify for the "Finished Goods Kit" Exclusion Is Supported by Substantial Evidence and In Accordance With Law ........................... 10
    C. Commerce Properly Prepared the Administrative Record in this Proceeding ................................................................................................ 11
    D. The Final Scope Ruling Does Not Need to be Remanded for Commerce to Exclude the Non-Extruded Aluminum Components of CCM's Rock-It 3.0 Mounts ................................................................. 12
    E. CCM's Constitutional Claims Lack Merit ............................................ 13
V. CONCLUSION .................................................................................................. 14

Ct. No. 20-00121

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Meridian Products LLC v. United States*,
   357 F. Supp. 3d 1351 (Ct. Int'l Trade 2019) ............................................................................6

*Meridian Products, LLC v. United States*,
   No. 13-00246, slip op. 20-43 (Ct. Int'l Trade Apr. 6, 2020) ......................................................7

*Meridian Products v. United States*,
   890 F.3d 1272 (Fed. Cir. 2018)..................................................................................................5

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   776 F.3d 1351 (Fed. Cir. 2015)............................................................................................7, 11

*Whirlpool Corp. v. United States*,
   357 F. Supp. 3d 1358 (Ct. Int'l Trade 2019) ............................................................................6

*Whirlpool Corp. v. United States*,
   890 F.3d 1302 (Fed. Cir. 2018)...............................................................................................6, 9

**Statutes**

19 U.S.C. § 1516a(b)(2)(A)(i) ................................................................................................3, 12

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650
   (Dep't Commerce May 26, 2011)..........................................................................................2, 8

*Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653
   (Dep't Commerce May 26, 2011)..........................................................................................2, 8

Ct. No. 20-00121

## I. INTRODUCTION

On behalf of Defendant-Intervenor Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit the following response to the December 14, 2020 brief filed by Plaintiffs China Custom Manufacturing Inc. and Greentec Engineering, LLC (collectively, "CCM"). *See* Pls.' Mem. of Law in Supp. of Pls.' Rule 56.2 Mot. for J. on the Agency R. (Dec. 14, 2020), ECF No. 31 ("CCM's Br."). In general, AEFTC agrees with and adopts the arguments presented in the United States' response brief with respect to CCM's claims, as briefly summarized below. *See* Def.'s Resp. to Pls.' Rule 56.2 Mot. for J. Upon the Agency R. (Apr. 2, 2021), ECF No. 35 ("Govt's Br."). AEFTC also briefly discusses additional reasons why the Court should find unpersuasive CCM's challenges to the administrative determination under appeal.

## II. RULE 56.2 STATEMENT

### A. Administrative Decision Sought to be Reviewed

CCM herein challenges the U.S. Department of Commerce's ("Commerce") final scope ruling under the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders") regarding CCM's Rock-It 3.0 solar roof mountings ("Rock-It 3.0 Mounts"). *See* Mem. from Frank Schmitt, Int'l Trade Compliance Analyst, Antidumping and Countervailing Duty Operations, Off. VI, through Steven Presing, Acting Dir., Antidumping and Countervailing Duty Operations, Off. VI, and Erin Kearney, Program Manager, Antidumping and Countervailing Duty Operations, Off. VI, to James Maeder, Deputy Assistant Sec'y for Antidumping and Countervailing Duty Operations, re: *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling*

1

*on CCM Solar Mounts* (May 14, 2020), AD P.R. 29/CVD P.R. 26[1] ("Final Scope Ruling"); *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); *Aluminum Extrusions From the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order").

### III.  ISSUES PRESENTED AND SUMMARY OF ARGUMENT

**A.  Whether Commerce's Determination That CCM's Rock-It 3.0 Mounts are Covered by the Scope of the Orders Is Supported by Substantial Evidence and In Accordance with Law?**

Yes.  AEFTC agrees with and adopts the arguments presented in the Government's brief with respect to CCM's claim that Commerce's determination that the Rock-It 3.0 Mounts are not excluded from the scope of the Orders as "finished merchandise" was arbitrary, capricious, and contrary to law.  Commerce properly determined based on the record evidence that the Rock-It 3.0 Mounts, which contain aluminum extrusions made from an aluminum alloy covered by the scope of the Orders that are machined and fabricated, are "subassemblies" within the meaning of the scope and do not qualify for the "finished merchandise" exclusion, in accordance with its current interpretation of the scope of the Orders, which the agency modified to bring into compliance with the holdings of the courts and is the correct interpretation of the scope.

**B.  Whether Commerce's Determination That CCM's Rock-It 3.0 Mounts Do Not Qualify for the "Finished Goods Kit" Exclusion Is Supported by Substantial Evidence and In Accordance with Law?**

Yes.  AEFTC agrees with and adopts the arguments presented by the Government demonstrating that Commerce correctly determined that CCM's Rock-It 3.0 Mounts also would

---

[1]     Documents on the public record of the underlying scope inquiry are identified by "AD P.R." and "CVD P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the court on Aug. 18, 2020.

Ct. No. 20-00121

fail to qualify for the "finished goods kit" exclusion in the scope of the Orders because they do not include all parts necessary to fully assemble a finished solar panel mounting system.

### C. Whether Commerce Properly Prepared the Administrative Record in This Proceeding?

Yes. AEFTC agrees with and adopts the arguments presented by the Government with respect to CCM's claim that Commerce omitted certain documents from the administrative record in this proceeding. Commerce properly complied with 19 U.S.C. § 1516a(b)(2)(A)(i) and CIT Rule 73.2 in filing the administrative record index with the Court. In addition, CCM failed to properly raise an argument with respect to any documents that it did not specifically identify in its memorandum in support of its motion for judgment on the agency record.

### D. Whether the Final Scope Ruling Needs to Be Remanded for Commerce to Exclude the Non-Extruded Aluminum Components of CCM's Rock-It 3.0 Mounts?

No. AEFTC agrees with and adopts the arguments presented by the Government with respect to CCM's claim that Commerce failed to exclude from the Orders the non-extruded aluminum components of the Rock-It 3.0 Mounts. It is reasonably discernible from the final scope ruling that Commerce determined that the non-extruded aluminum components of CCM's Rock-It 3.0 Mounts are excluded from the scope of the Orders.

### E. Whether CCM's Constitutional Claims Lack Merit?

Yes. AEFTC agrees with the Government that CCM's constitutional claims lack merit, and adopts the arguments presented by the Government with respect to these claims.

Ct. No. 20-00121

IV. **ARGUMENT**

    A. **Commerce's Determination That CCM's Rock-It 3.0 Mounts Are Covered by the Scope of the Orders Is Supported by Substantial Evidence and In Accordance with Law**

AEFTC agrees with and adopts the arguments presented by the Government with respect to CCM's claim that Commerce's determination that the Rock-It 3.0 Mounts are not excluded from the scope of the Orders as "finished merchandise" was arbitrary, capricious, and contrary to law. Govt's Br. at 19-29; *see also* CCM's Br. at 21-35.[2] Specifically, the Government's brief explains that Commerce determined that the Rock-It 3.0 Mounts contain aluminum extrusions made from an aluminum alloy covered by the scope of the Orders that are machined and fabricated and thus covered by the plain scope language. *See* Govt's Br. at 20; *see also* Final Scope Ruling at 15. Having determined as such, the Government explains that Commerce reasonably determined that the Rock-It 3.0 Mounts do not qualify for the "finished merchandise" exclusion in the scope. *See* Govt's Br. at 20-21. Rather, Commerce properly determined that the Rock-It 3.0 Mounts are "subassemblies" within the meaning of the scope, which act as intermediary products that consist of partially assembled merchandise, and that require incorporation into a solar panel mounting system to function, having found that the record information demonstrates that after importation, the mounts are combined with a "Rock-It Slide, a level nut cap, a Rock-It 3.0 Coupling, a load bearing foot, and a Rock-It 3.0 Array Skirt to form the Rock-It System 3.0, which is used to mount a solar panel." *See id.* at 22-23; *see also* Final Scope Ruling at 17-18.

---

[2]     AEFTC also agrees with the Government that as the Rock-It 3.0 Mounts fail to meet the "finished merchandise" exclusion requirements, CCM's arguments regarding statutory interpretation are misguided and irrelevant. *See* Govt's Br. at 27-28; *see also* CCM's Br. at 22-27.

As the Government's brief notes, CCM effectively concedes that its Rock-It 3.0 Mounts are subassemblies, instead arguing that both subassemblies and assemblies should be excluded from the Orders as "finished merchandise," relying on prior scope rulings that predate intervening case law.  *See* Govt's Br. at 23-25; CCM's Br. at 30-31.  However, as the Government's brief explains, Commerce has modified its interpretation of the subassemblies provision and the finished merchandise exclusion in the scope of the Orders to bring it into compliance with the holdings of the courts.[3]  *See* Govt's Br. at 23-24.  Specifically, in its second remand redetermination in the scope inquiry involving certain extruded aluminum door handles for kitchen appliances, in evaluating whether the handles at issue were "fully and permanently assembled and the time of entry" and if so, to determine the applicability of the "finished merchandise" exclusion consistent with the holdings of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in *Meridian Products v. United States*, 890 F.3d 1272 (Fed. Cir. 2018) ("*Meridian III*")[4] and

---

[3]  CCM argues both that the Meridian Second Remand invalidated prior scope rulings involving subassemblies, *see* CCM's Br. at 21, and that prior scope rulings involving subassemblies were not revoked by the Meridian Second Remand.  *Id.* at 30-31; *see also* Final Results of Second Redetermination Pursuant to Court Remand, *Meridian Products LLC v. United States*, Ct. No. 13-00246, slip op. 19-5 (CIT Jan. 14, 2019) (May 15, 2019) ("Meridian Second Remand")) attached as Attachment 1 to Letter from Wiley Rein LLP to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: Comments on CCM's Scope Ruling Request* (Dec. 20, 2019), AD P.R. 16/CVD P.R. 14 ("Petitioner's Dec. 20, 2019 Comments"). Again, Commerce has modified its interpretation of the subassemblies provision to bring it into compliance with the holdings of the courts.  Furthermore, as the Government's brief also explains, each scope ruling is limited to the specific product at issue and dependent on the facts of the specific proceeding.  *See* Govt's Br. at 28.

[4]  In *Meridian III*, the Federal Circuit upheld Commerce's original scope ruling finding that certain extruded aluminum door handles for kitchen appliances that are packaged for importation with two plastic end caps and two screws ("Type B handles") are included within the general scope of the Orders and also held that the scope as a whole supports Commerce's treatment of the end caps as fasteners, concluding that Commerce's original ruling that the Type B handles are not excluded from the scope under the "finished goods kit" exclusion is reasonable and supported by substantial evidence.  *See Meridian III*, 890 F.3d at 1275, 1280-81.  Because it was unclear whether the handles are fully and permanently assembled at the time of entry, the Federal Circuit remanded the case for Commerce to clarify whether the handles are fully and permanently assembled at the

Ct. No. 20-00121

*Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018) ("*Whirlpool III*"),[5] as well as the Court's order in *Meridian Products LLC v. United States*, 357 F. Supp. 3d 1351 (Ct. Int'l Trade 2019) ("*Meridian IV*"),[6] Commerce evaluated the scope language and the structure of the scope of the Orders as a whole and concluded that there is a delineation in the scope among three categories of products:

> (1) *Subassemblies*: aluminum extrusion components that are attached {with other aluminum extrusions and/or with non-aluminum extrusion components at the time

---

time of entry, and if so, to then address the question of whether the handles are excluded from the scope as "finished merchandise." *See id.* at 1281-82.

[5]   In *Whirlpool III*, the Federal Circuit held that the general scope language unambiguously includes aluminum extrusions that are part of an assembly in finding that substantial evidence supports Commerce's original scope ruling finding that the general scope language covers certain extruded aluminum kitchen appliance door handles assembled with plastic end caps. *Whirlpool III*, 890 F.3d at 1309. The Federal Circuit also held that Commerce incorrectly interpreted the exclusions in the scope, specifically that Commerce applied an incorrect interpretation of the "fasteners exception," *i.e.*, that an imported product will not be considered finished and excluded from the scope merely by including fasteners such as screws, bolts, etc., and that such exception applies only to the "finished goods kit" exclusion and not the "finished merchandise" exclusion. Noting that Commerce did not reach a determination as to whether the assembled handles meet the requirements of the "finished merchandise" exclusion because of its view that the "fasteners exception" applied to the "finished merchandise" exclusion, and that this Court also declined to engage in an analysis of the "finished merchandise" exclusion, the Federal Circuit remanded the case for Commerce to reassess the assembled handles in light of this interpretation. *See id.* at 1311-12.

In *Whirlpool Corp. v. United States*, 357 F. Supp. 3d 1358 (Ct. Int'l Trade 2019), this Court also directed that if Commerce finds the assembled handles to be within scope despite the "finished merchandise" exclusion, the agency must explain its reasoning and also clarify whether it is finding the handles in their entirety, or only the extruded aluminum components, to be within scope, and also address the subassemblies provision. *See id.* at 1363. The parties subsequently entered into a stipulation of dismissal, and the Court dismissed the case.

[6]   In *Meridian IV*, this Court noted that Commerce may not reach a determination that the "finished merchandise" is inapplicable on the ground that some or all of the non-aluminum-extrusion components are "fasteners," to comply with the holding of *Whirlpool III*. In addition, the Court directed that if Commerce concludes that the handles are entered in unassembled form, the agency must clarify whether it considers the entire unassembled handle, or only the extruded aluminum center component, to be subject to the Orders and conversely, if Commerce concludes that the handles are in assembled form at the time of entry, whether it is the extruded aluminum component, or the entire handle that Commerce considers to fall within the scope. *Meridian IV*, 357 F. Supp. 3d at 1356-57.

6

of importation} to form subassemblies, *i.e.*, assembled, upon importation (not excluded); (2) *Finished goods kits*: aluminum extrusion components in a packaged combination of parts that are unassembled at the time of importation, and that will undergo assembly upon importation into a final finished good (excluded under the finished goods kit exclusion); and (3) *Finished merchandise*: merchandise containing extrusions as parts that are fully and permanently assembled and completed at the time of entry (excluded under the finished merchandise exclusion), which does not include a subassembly.[7]

*See* Govt's Br. at 10-11; Meridian Second Remand at 23, 25.

Relying on the Federal Circuit's decisions on curtain wall units in *Shenyang Yuanda* as a guiding principal to determine whether a product is a "subassembly" or excluded as "finished merchandise," Commerce now analyzes whether the subassembly was "designed to be attached to other units to eventually form a completed" final finished product and whether the individual subassembly has any consumptive or practical use on its own. Meridian Second Remand at 27; *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1358 (Fed. Cir. 2015) ("*Shenyang Yuanda 2015*").

While adopting and incorporating the Government's response to CCM's argument, AEFTC presents below additional reasons why this Court should sustain Commerce's final scope ruling. First, Commerce's interpretation of the subassemblies provision and the finished merchandise exclusion discussed above is the correct interpretation of the scope of the Orders. The plain scope language distinguishes between "subassemblies" covered by the scope and fully

---

[7] In the Meridian Second Remand, Commerce ultimately found the extruded aluminum components of the handles to be subject to the Orders and the non-extruded aluminum components to not be subject, and that the handles do not qualify for the "finished merchandise" exclusion. Meridian Second Remand at 37. Neither the plaintiff nor the plaintiff-intervenor in the proceeding submitted comments on the draft remand redetermination that Commerce issued or comments to the Court on the final results of the second remand redetermination, and thus the Court did not reach the merits of Commerce's second remand redetermination but sustained the determination. *See Meridian Products, LLC v. United States*, No. 13-00246, slip op. 20-43 at 4-5 (Ct. Int'l Trade Apr. 6, 2020).

and permanently assembled merchandise that may be excluded as "finished merchandise." Specifically, the scope language states that "{t}he scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits." AD Order at 30,651; CVD Order at 30,654. In contrast, the Orders state that the scope excludes "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." AD Order at 30,651; CVD Order at 30,654.

Indeed, in the Meridian Second Remand, Commerce found that this interpretation is consistent with the petitioner's original intent to cover aluminum extrusions that form subassemblies within the scope but not final finished merchandise. *See* Meridian Second Remand at 24. Specifically, Commerce found that information from the original petition and related documents demonstrate that:

> Through their explanation and revisions, the petitioners clearly and consistently expressed their intent to . . . include in the *Orders* other aluminum extrusions that are attached to form subassemblies that are not imported as part of a kit . . . .
> . . .{P}etitioners made clear that they intended the finished merchandise exclusion to apply only to those assemblies which could be considered fully and permanently assembled and completed at the time of entry, and not subassemblies within the meaning of the general scope language.

*Id.* at 24-26.

"Partially assembled" in the subassemblies provision of the scope language describes the final finished good. In other words, merely because a subassembly is complete at the time of entry does not exclude it from the scope. Such an interpretation improperly expands the "finished merchandise" exclusion and reads the subassembly language out of the scope entirely. In light of

8

Case 1:20-cv-00121-SAV   Document 36   Filed 05/05/21   Page 12 of 18
Ct. No. 20-00121

the Federal Circuit's express recognition that the general scope language covers assemblies containing aluminum extrusions, *see Whirlpool III*, 890 F.3d at 1309, Commerce correctly interprets "subassemblies" to mean parts of a larger final finished product for which only the extruded portion is covered by the scope. *See* Meridian Second Remand at 29-30.

Second, CCM's own description of the Rock-It 3.0 Mounts demonstrates that the mounts are subassemblies within the meaning of the scope – designed specifically to become part of a larger downstream product, the Rock-It 3.0 System, and need to be assembled with other components in the Rock-It 3.0 System after importation in order to perform their function as mounts. For instance, CCM included in its scope ruling request a product brochure for EcoFasten's "Rock-It System 3.0," which lists the specific components that are part of the system, including the Rock-It 3.0 Mount and various other components. *See* Letter from Law Offices of George R. Tuttle to Sec'y Commerce, re: *Aluminum Extrusions from the People's Republic of China: (A-570-967 and C-570-968); Scope of Request on Aluminum Assemblies Imported by the People's Republic of China: ROCK-IT 3.0 Solar Roof Mountings* (Oct. 4, 2019), AD P.R. 11/CVD P.R. 10 at Exhibit 9, p. 1. Solar panels do not appear to be included in the Rock-It System 3.0. *See id.* CCM also describes the installation process for the Rock-It 3.0 System, which further demonstrates that the mounts need to be attached to and assembled with other components to perform their functions as mounts. *See* CCM's Br. at 5-7. Thus, the relevant final finished good is the Rock-It System 3.0, not the individual parts or subassemblies contained within.

Third, CCM's repeated claims that some of the "finished merchandise" exemplars, *i.e.*, "windows with glass" or "doors with glass or vinyl" are subsequently installed in a downstream structure, akin to how the Rock-It 3.0 Mounts are installed in the solar panel mounting system, and CCM's attempt to liken the mounts to solar panels, *see id.* at 27, 35, ignore the framework that

Ct. No. 20-00121

Commerce set forth in the Meridian Second Remand and reiterated in the Final Scope Ruling for determining whether a product constitutes a "subassembly" or "finished merchandise." The exemplars of finished merchandise specified in the scope language, *i.e.*, "finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels" are defined by the scope as in and of themselves finished merchandise, and there is no need to further analyze whether the enumerated products work in conjunction with other products. In contrast, mounts for solar panel mounting systems are not a specifically enumerated example of finished merchandise in the scope language, and Commerce, as the fact-finder, properly found that the Rock-It 3.0 Mounts are designed to become part of a downstream final product and are not themselves finished merchandise which perform a function independent of the complete solar panel mounting system, and meet the definition of subassembly in the scope. *See* Final Scope Ruling at 18-19. The Rock-It 3.0 Mounts are not meaningfully different from the kitchen appliance handles that Commerce found to be "subassemblies" or "parts for" final finished goods that will become part of a larger whole, a kitchen appliance, after importation and not excludable from the coverage of the Orders as "finished merchandise" or the curtain wall units designed to be attached to other units to eventually form a completed curtain wall, as Commerce explained in the Final Scope Ruling. *See id.*; *see also* Meridian Second Remand at 26-27, 31; *Shenyang Yuanda 2015*, 776 F.3d at 1358.

> **B.** **Commerce's Determination That CCM's Rock-It 3.0 Mounts Do Not Qualify for the "Finished Goods Kit" Exclusion Is Supported by Substantial Evidence and In Accordance with Law**

AEFTC agrees with and adopts the arguments presented by the Government demonstrating that Commerce correctly determined that CCM's Rock-It 3.0 Mounts also would fail to qualify for the "finished goods kit" exclusion in the scope of the Orders because they do not include all parts necessary to fully assemble a finished solar panel mounting system. *See* Govt's Br. at 29-30.

10

Ct. No. 20-00121

While adopting and incorporating the Government's arguments, AEFTC would like to add that in a prior scope ruling under the Orders for Clenergy (Xiamen) Technology Co. Ltd.'s ("Clenergy") solar panel mounting systems, Commerce found certain unassembled mounting systems, consisting predominantly of extruded aluminum rails, extruded and cast aluminum kedges, galvanized steel posts, and various stainless steel bolts, clamps, brackets, and fasteners, to be excluded from the scope of the Orders as "finished goods kits." *See* Petitioner's Dec. 20, 2019 Comments at 12-13.  In concluding that at the time of importation Clenergy's mounting system kits contain all of the parts necessary to fully assemble a finished good and can be assembled as is into finished products, Commerce determined that the "finished good" is the complete solar panel mounting system.  *See id.*  The Rock-It 3.0 Mounts are one component of a solar panel mounting system, and akin to one part or subassembly in Clenergy's mounting system kit.  One component of the solar panel mounting system cannot be characterized as "finished merchandise" or a "finished goods kit."

      **C.**      <u>**Commerce Properly Prepared the Administrative Record in this Proceeding**</u>

AEFTC agrees with and adopts the arguments presented by the Government with respect to CCM's claim that Commerce omitted certain documents from the administrative record in this proceeding.  *See* Govt's Br. at 30-35; CCM's Br. at 37-45.  As the Government's brief explains, Commerce properly complied with 19 U.S.C. § 1516a(b)(2)(A)(i) and CIT Rule 73.2 in filing the administrative record index with the Court.  *See* Govt's Br. at 31.

While adopting and incorporating the Government's response, AEFTC presents below additional reasons why CCM's claims in this regard are unpersuasive.  With respect to the Meridian Second Remand, as the Government's brief explains, contrary to CCM's claim, this document is included in full in the administrative record.  *Id.* at 33.  Specifically, AEFTC included the document as an attachment to its submission of comments on CCM's scope ruling request.  *See*

Petitioner's Dec. 20, 2019 Comments at Attachment 1. While CCM also broadly references "identified documents" in Section D of its memorandum, *see* CCM's Br. at 40, the only document specifically identified in that section is the Meridian Second Remand. *See id.* at 41-42. While the Government's brief observes that CCM may be referring to certain documents that CCM included with its motion to remand the case to Commerce to incorporate documents that CCM claimed were omitted, *see* Govt's Br. at 33, CCM failed to specifically identify any such documents in its memorandum in support of its motion for judgment on the agency record. *See* CCM's Br. at 41-42. Accordingly, AEFTC submits that CCM failed to properly raise an argument with respect to such documents.

    AEFTC would like to also underscore that CCM's suggestion that Commerce was obligated to add certain documents that CCM selectively quoted in its submissions to Commerce in the underlying proceeding or now deems relevant has no basis in law. *See id.* at 41. The burden was on CCM to provide to Commerce in full any documents that it deemed relevant to its scope ruling request. Tellingly, while CCM does not specifically identify any documents other than the Meridian Second Remand, CCM asks the Court to remand the proceeding for CCM to submit an amended scope request and for Commerce to issue a revised scope decision. *See id.* at 42. That CCM would like to amend its scope ruling request upon receiving an unfavorable outcome is not a basis for the Court to remand the proceeding to Commerce. Commerce properly considered all information on the record of the underlying proceeding and the Final Scope Ruling is supported by substantial evidence.

    **D.**     **The Final Scope Ruling Does Not Need to be Remanded for Commerce to Exclude the Non-Extruded Aluminum Components of CCM's Rock-It 3.0 Mounts**

    AEFTC agrees with and adopts the arguments presented by the Government with respect to CCM's claim that Commerce failed to exclude from the Orders the non-extruded aluminum

12

components of the Rock-It 3.0 Mounts. Govt's Br. at 35-38; CCM's Br. at 35-37. The Government's brief explains that it is reasonably discernible from the Final Scope Ruling that Commerce determined that the non-extruded aluminum components of CCM's Rock-It 3.0 Mounts are excluded from the scope of the Orders. Govt's Br. at 36.

While adopting and incorporating the Government's response to CCM's claim, AEFTC would like to underscore that Commerce's finding that the CCM's Rock-It 3.0 Mounts are subassemblies, *see* Final Scope Ruling at 18, and given Commerce's explanations in the Final Scope Ruling clearly indicating that the scope includes aluminum extrusion components that are attached to form subassemblies, *see id.* at 15, 18, indicates that it is the extruded aluminum components of the Rock-It 3.0 Mounts that Commerce found to be covered by the scope of the Orders pursuant to the subassembly language, not the non-extruded aluminum components.

### E. CCM's Constitutional Claims Lack Merit

AEFTC also agrees with the Government that CCM's constitutional claims lack merit, and adopts the arguments presented by the Government with respect to these claims. Govt's Br. at 36-38. AEFTC also agrees with the Government that CCM's constitutional claims appear to be based on the arguments that Commerce erred in omitting certain documents or information from the administrative record and also that Commerce included the non-extruded aluminum components of the Rock-It 3.0 Mounts in the scope of the Orders, but that Commerce properly created the administrative record and it is reasonably discernible from the Final Scope Ruling that Commerce did not include the non-extruded aluminum components of the Rock-It 3.0 Mounts in the scope of the Orders. *See id.* at 37-38; *see also* CCM's Br. at 41-45,

Ct. No. 20-00121

## V. CONCLUSION

For the foregoing reasons, AEFTC respectfully request that the Court sustain Commerce's final scope ruling on CCM's Rock-It 3.0 Mounts.

                                            Respectfully submitted,

                                            */s/ Robert E. DeFrancesco, III*
                                            Alan H. Price, Esq.
                                            Robert E. DeFrancesco, III, Esq.
                                            Elizabeth S. Lee, Esq.

                                            **WILEY REIN LLP**
                                            1776 K Street, NW
                                            Washington, DC 20006
                                            (202) 719-7000

                                            *Counsel for Aluminum Extrusions Fair Trade Committee*

Dated:  May 5, 2021

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Defendant-Intervenors' Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 4,456 words.

/s/ Robert E. DeFrancesco, III
(Signature of Attorney)

Robert E. DeFrancesco, III
(Name of Attorney)

Aluminum Extrusions Fair Trade Committee
(Representative Of)

May 5, 2021
(Date)