UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JUDGE STEPHEN A. VADEN

| | |
|---|---|
| CHINA CUSTOM MANUFACTURING, INC. and GREENTEC ENGINEERING LLC, <br><br>                                   Plaintiffs <br><br>                    v. <br><br> UNITED STATES, <br>                                   Defendant <br><br> and <br><br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br><br>                              Defendant-Intervenor | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : Court No:  20-00121 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT- INTEVENOR RESPONSE TO PLAINTIFF's RULE 56.2 MOTION FOR JUDGEMENT UPON THE AGENCY RECORD**

June 2, 2021

George R. Tuttle, Sr.

Law Offices of George R. Tuttle
A Professional Corporation
3950 Civic Center Drive, Ste 310
San Rafael, California 94903
(415) 986-8780
*Attorney for Plaintiff*
   *China Custom Manufacturing, Inc.*
   *and Greentec Engineering LLC*

{0175943.DOCX;1}

# Table Of Contents

ARGUMENT ..................................................................................................................1

I.   Commerce impremissble modified the scope of the order .............................................1

II.  Commerce's added requirement that "finished merchandise" must consist of a "completed" final finished product is contrary to the plain language of the Order and incorporates the requirements of the "final" finished goods kit into the 'finished merchandise" exclusion ....................................................................................6

III. The rule of exclusion *exclusio alterius expressio unius est exclusio alterius* and *noscitur a sociis* applies to the omission of the word "final" included in the "final finished good kit" exclusion but not in the "finished merchandise" exclusion .............8

    A.   The mounts are not parts to be attached together ...............................................8

    B.   The listed exemplars to the finished merchandise exclusion preceded by "such as" are words of extension, which includes solar panels as "finished merchandise," and establishes that the Orders include finished merchandise articles used in the solar panel mounting systems which meet the finished merchandise definition are excluded from the Order, such as mounts. ...................................................................................................9

    C.   The Commerce three-part analysis in the Meridian Second Remand Determination and applied by Commerce in the CCM scope decision erroneously merged the "final finished merchandise kit" exclusion into the "finished merchandise" exclusion based on *Shenyang Yuanda 2015* decision ..................................................................................10

IV.  As Commerce ruled the aluminum extrusions in the mounts are subject to the Order but did not respond to CCM's argument that the non-extrusion components of the mounts were excluded from the Order, CCM's arguments to remand and the violation of procedural due process were valid, defendants contrary arguments must be dissmissed, but the defendant's concession accepted ...............................................................................14

V.   Conclusion .....................................................................................................................14

# Table of Authorities

**Cases**

*Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311 (2015) .............................................. 3

*Meridian Products LLC v. United States,* Court No. 13-00246, 2020 WL 1672840 (Ct. Int'l
    Trade April 6, 2020) ........................................................................................................ 13

*Peer Bearing Co. - Changshan v. United States*, 128 F. Supp. 3d 1286 (2015) ............................ 3

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351 (2015) ....... 2, 8, 9

*Whirlpool Corp. v. United States*, 890 F.3d 1302 (2018) .................................................... 5, 6, 7, 8


**Other Authorities**

Aluminum *Extrusions from the People's Republic of China: Antidumping Duty Order*,
    76 FR 30650 (May 26, 2011) ...................................................................................... passim

*Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*,
    76 FR 30653 (May 26, 2011) ...................................................................................... passim

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JUDGE STEPHEN A. VADEN

| | |
|---|---|
| CHINA CUSTOM MANUFACTURING, INC. and GREENTEC ENGINEERING LLC,<br><br>                                            Plaintiffs<br><br>          v.<br><br>UNITED STATES,<br>                                            Defendant<br><br>and<br><br>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,<br><br>                                  Defendant-Intervenor | Court No: 20-00121 |

**PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT- INTEVENOR RESPONSE TO PLAINTIFF's RULE 56.2 MOTION FOR JUDGEMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, China Custom Manufacturing, Inc. and Greentec Engineering LLC (hereinafter "CCM" or "plaintiff") responds to Defendant and Defendant-Intervenor Reply to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record.

## ARGUMENT

**I.  Commerce Impermissible Modified the Scope of the Order**

Contrary to the plain language of the Aluminum Extrusion Order[1], Commerce modified

---

[1] *See* Aluminum *Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 FR 30650 (May 26, 2011) *and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 FR 30653 (May 26, 2011) ("the Orders").

the scope of the Order by omitting the word "parts" from the definition of "finished merchandise" and by adding the word "final" to the "final finished good kit" exclusion language, so as to read "final finished merchandise."

> The evolution of Commerce's application of the Orders relates to the distinction between subject merchandise that are "subassemblies," and subject merchandise that are excluded from the Orders. Prior to these terms being litigated, Commerce treated certain "subassemblies" as also qualifying for the "finished merchandise" or "finished goods kits" exclusions. … For example, in a scope ruling from 2013, Commerce articulated the then-existing "subassemblies test" as follows: "[S]ubassemblies may be excluded from the scope of the *Orders* as 'finished goods' or 'finished goods kits' provided that they require no further 'finishing' or 'fabrication' prior to assembly, contain all the necessary hardware and components for assembly, and are ready for installation at the time of entry." Under this test, subassemblies that were excluded as "finished goods" or "finished goods kits" were "later integrated into a larger system, or a downstream product.

Def Br. at 4-5. This change modified the Order and the plain meaning of the "finished merchandise" exclusion to exclude the mounts, which are subassemblies that are fully and permanently assembled at the time of importation. Commerce overstepped its authority when it required that all of the Eco Fasten mounting system components be assembled together to create what it considered to be the finished merchandise – a solar panel mounting system. By doing so, Commerce impermissibly modified the scope of the Order, contrary to judicial requirements.

CCM's position is supported by the standard of review, which begins with an analysis of the language of the Order. As stated in *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, "Scope language is the "cornerstone" of any scope determination." 776 F.3d 1351, 1356 (2015) ("Shenyang 2015").

Commerce is limited to clarifying the scope of the Order based on the actual words of the Order. Commerce may not interpret an order so to change its scope, nor can Commerce interpret an order contrary to its terms. *Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311

(2015). Commerce may include merchandise within an order only if the language of the order expressly included it or if the scope can be <u>reasonably interpreted</u> to include the merchandise. *Peer Bearing Co. - Changshan v. United States*, 128 F. Supp. 3d 1286 (2015).

In this case, the Orders on Aluminum Extrusions from China refers to parts that are later assembled with or into finished products:

> Subject aluminum extrusions may be described at the time of importation <u>as parts for final finished products</u> that are assembled after importation, **including, but not** limited **to,** <u>window frames, door frames,</u> solar <u>panels, curtain walls, or furniture</u>. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope.

*Id.* at 30,650-51. Those parts may even be imported in the form of subassemblies:

> The scope includes the aluminum extrusion components that are attached (*e.g.,* by welding or fasteners) to form subassemblies, *i.e.,* partially assembled merchandise <u>unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits</u>.

*Id.* (emphasis added). Parts that are made from aluminum extrusions are within the scope of the Order unless imported as a part or a component of a finished goods 'kit.' <u>On the other hand</u>, the language of the scope clarifies that the Order does not include non-aluminum extrusion components that are parts of subassemblies or in the subject kits.

According to the Order, subassemblies contain aluminum extrusion components that are parts for final finished products that are assembled after importation, including but not limited to window frames, door frames, solar panels, curtain walls, or furniture. The subassemblies may be "partially assembled merchandise" such as by welding or fasteners, but any non-extrusion components of the subassemblies would be excluded from the Order.

The Orders also excludes "finished Merchandise," which is defined as:

> … finished merchandise containing aluminum extrusions as <u>parts that are fully and permanently assembled and completed at the time of entry</u>, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels (emphasis added).

*Id.* at 30,651. Finished Merchandise, which is excluded from the scope of the Orders consists of merchandise made up of both aluminum extrusions and non-extrusions parts. These "parts" must be fully and permanently assembled and otherwise complete at the time of entry. The Order provides several examples of finished merchandise, including: windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

The Order also described what it means by a finished goods 'kit':

> A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all the necessary parts to <u>fully</u> assemble a final <u>finished good</u> and requires no further finishing or fabrication, such as cutting or punching and is assembled <u>"as is" into a finished product</u>. An imported product will not be considered a "finished goods kit" [finished product] and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product (emphasis added).

*Id.* The physical requirements for the "finished merchandise <u>kit</u>" exclusion at the time of importation include a packaged combination of parts that contains at the time of importation:

- all necessary parts to fully assemble "as is" into a final finished product.
- requires no further finishing or fabrication, such as cutting or punching.
- does not include fasteners, such as screws, bolts, etc. in the packaging with the aluminum extrusions.

The Department erroneously concluded that the mounts were not <u>finished merchandise</u> because they had to be assembled with other solar panel components to be "permanently assembled and completed at the time of entry" to form the solar panel mounting system:

> Specifically, Commerce found that the solar mounts at issue "consist

> of aluminum extrusion components <u>that are attached to form subassemblies</u>." Final Scope Ruling, P.R. 29 at 19. However, "because they lack the necessary components that would allow them to function as a solar panel mounting system (*i.e.,* a Rock-It Slide, a level nut cap, a Rock-It 3.0 Coupling, a load bearing foot, and a Rock-It 3.0 Array Skirt), they are not '<u>fully and permanently assembled and completed</u> at the time of entry,' and, thus, do not qualify for the finished merchandise (emphasis added)

Def. Br. at 14.

The record before Commerce in the CCM Scope Ruling request (P.R. 10 at 2) established that the Eco Fasten mounts are installed with these other identified components and solar panels to function as the downstream solar panel mounting system. (P.R. 10 at Exhibit 9). The mounts are clearly "parts" of this solar panel system, however, the question is whether they also constitute as "finished merchandise," because they are fully and permanently assembled at the time of entry.

The analysis of the scope of an order requires the application of the Plain Meaning rule. In *Whirlpool III*[2] the CAFC set forth the legal criteria for Commerce to determine whether goods are included or exuded from the scope of AD/CVD Orders. The CAFC in *Whirlpool III* agreed with the CIT that the Orders <u>define</u> "finished merchandise" as "merchandise containing aluminum extrusions and parts that are fully and permanently assembled and completed at the time of entry."[3] The CIT, however, declined to engage in an analysis of the finished merchandise exclusion and remanded the case to Commerce to "arrive at a <u>legally permissible</u> interpretation of the finished merchandise exclusion…" (emphasis added). The question remains: when is an article included within the scope as a subassembly as opposed to excluded "finished merchandise"? The "legally permissible interpretation" required by the Order and the

---

[2] Whirlpool Corp. v. United States, 890 F.3d 1302, 1305 (2018) ("Whirlpool III")

[3] *Id.* 1305-1306.

CAFC decision in *Whirlpool III*, *supra*, is that mounts are under the finished merchandise exclusion when they require no further processing or fabrication after importation and can be installed in a downstream product, such as a structure or a solar panels system by simple assembly.  The application of the finished merchandise exclusion to subassemblies such as the mounts does not nullify the subassemblies language of the order and swallow the whole (P.R. 16 at 18). While the finished merchandise exclusion has applied by Commerce in various scope decisions prior the Meridian Second Remand Redetermination—Commerce restricted and modified the definition of finished merchandise, it did not revoke these decisions.  Hence, they are still in accordance with law as applied to the merchandise in this decision.  Commerce's rulings involving finished goods or finished goods kits involve subassemblies excluded from the order and support the exclusion of the CCM Mounts as finished merchandise, include:

Commerce's scope decisions on Side Mount Valve Controls (See P.R. 31, Attachment 4), Valeo (P.R. 32, Attachment 5), and Foreline Hose Assembly (P.R.34, Attachment 7), Plasticoid Aluminum Rails (P.R. 30, Attachment 1), Fasnap Telescoping Poles (P.R. 37, Attachment 10), Air Master aluminum Jalousie Shutters (P.R. 37, Attachment 11), Circle Glass screen and storm door patio kits (P.R. 31, Attachment 2), Clenergy solar panel mounting systems (P.R. 31, Attachment 3), UQM motor cases (P.R. 33, Attachment 6) scope decisions.  Commerce set for the new standard but offered an inadequate explanation of the reasons the prior application of the finished merchandise exclusion should not apply to subassemblies.

II.   **Commerce's added requirement that "finished merchandise" must consist of a "completed" final finished product is contrary to the plain language of the Order and incorporates the requirements of the "final" finished goods kit into the 'finished merchandise" exclusion**

Commerce concluded in its CCM Scope decision (P.R. 29 at 15):

> Second, Commerce considers whether the product is "partially

> assembled," or fully and permanently assembled and completed" upon importation. *Id*. at 15-16 (citing Second Meridian Remand Redetermination at 20-23). Commerce also explained that "[a] subassembly could also be described as an intermediate product or any other partially assembled product that is less than the full, permanent, and completed final finished product which satisfies the finished merchandise exclusion." *Id.* at 15 (citing Second Meridian Remand Redetermination at 20-23).

Commerce restricted and modified the Order by adding the words "completed" and "final" to the "finished merchandise" exclusion. Under the Commerce criteria "finished merchandise" cannot satisfy this exclusion unless all of the components to fully assemble the solar panel mounting system (the final finished, completed good kit requirement) into the "finished merchandise" exclusion are present. P.R. 29 at 16.

> Commerce also observed that "the fact that the subassembly could be described in its own right with reference to its end use, or that such subassembly requires no further fabrication or assembly to perform its function as a subassembly, does not mean that it will constitute finished merchandise under the exclusion." *Id.* at 16 (citing Second Meridian Remand Redetermination at 20-23) (emphasis added).

The Aluminum Extrusion Order, however, omits the word "final" and includes the word "parts" in defining the "finished merchandise" exclusion, in contrast, to the "final finished good kit" exclusion. This omission of "final" in the finished merchandise exclusion is analogous to the omission of "connectors" from the "finished merchandise" under *Whirlpool Corp. v. United States*, 890 F.3d 1302 (2018) ("*Whirlpool III*"). The court ruled that the plain meaning rule required that the connectors limitation in the "final finished good kit" exclusion cannot be read or imputed to the "finished merchandise" exclusion.

Commerce, however, contrary to the facts and law, unreasonably ruled in the CCM scope decision that the mounts are not "finished merchandise" because the mounts as imported were not assembled after importation with the other Eco Fasten components to form the Eco Fasten

solar panel mounting system and form the "completed final finished product"—the panel mounting system—not a requirement of the "finished merchandise" exclusion. P.R. 29 at 19.

Under *Whirlpool III*, the omission of the word "parts" and the inclusion of the word "final" in the description the mounts is contrary to the plain meaning of the definition of finished merchandise and contrary to law.

III. **The rule of exclusion *exclusio alterius expressio unius est exclusio alterius* and *noscitur a sociis* applies to the omission of the word "final" included in the "final finished good kit" exclusion but not in the "finished merchandise" exclusion**

The *Shenyang 2015* decision did not address this issue of the addition of the word "final" from the finished good kit exclusion to the "finished merchandise" exclusion.  The court cited the rules of construction, *expressio unius est exclusio alterius* and *noscitur a sociis* in support of the decision. These rules apply equally to the "finished merchandise" exclusion.  The words "final" appears in the finished goods kit exclusion, to require the assembly of the final finished merchandise without any reference to the parts.  There is no requirement that the finished merchandise be a "final" fully finished product, under the holding of *Shenyang 2015*.

A. **The mounts are not parts to be attached together**

The *Shenyang 2015* court ruled that a part (widow wall units) are not "finished merchandise," without further explanation:

> A single unit does not a curtain wall make, <u>nor is it a finished product.</u>  As the CIT correctly explained, "[c]urtain wall units are [] undeniably components that are fastened together to form a completed curtain wall. Thus, they are 'parts for,' and 'subassemblies' for, completed curtain walls." *Id*<u>. A part or subassembly, here a curtain wall unit, cannot be a finished product (emphasis added)</u>

*Id.* at 1358

The mounts in this case, however, conform to the Order's definition of "finished

merchandise" as "parts" that are fully and permanently assembled at the time of importation, and ready for use, as such are excluded from the Order. Moreover, the mounts are attached to the solar panels and the rails—not attached together like the window wall units. The holding in *Shenyang 2015* is not applicable to the mounts – which meet the definition of "finished merchandise."

> B. **The listed exemplars to the finished merchandise exclusion preceded by "such as" are words of extension, which includes solar panels as "finished merchandise," and establishes that the Orders include finished merchandise articles used in the solar panel mounting systems which meet the finished merchandise definition are excluded from the Order, such as mounts.**

The *Shenyang 2015* court holding is not applicable to the mounts and the doctrine of *expressio unius est exclusio alterius* and *noscitur a sociis* are not applicable to this exclusion:

> Moreover, although the scope excludes "windows with glass," it does not exclude curtain wall units with glass. J.A. 125; *see also Shenyang Yuanda*, 961 F. Supp. 2d at 1298 ("[I]t is apparent that the Orders separately and intentionally distinguish windows from curtain wall units, and that the 'finished merchandise' exception does not encompass curtain wall units."). Under the doctrines of *expressio unius est exclusio alterius* and *noscitur a sociis*, that finished windows with glass are excluded by name means that walls with glass are necessarily included, <u>leaving aside that curtain walls are also specifically included by name.</u> Accordingly, the CIT correctly determined Yuanda's curtain wall parts are not finished merchandise because it is nonsensical to construe "*parts for . . . curtain walls*" to mean finished merchandise. *Id*. at 1299 (internal quotation marks and citation omitted).

*Id.* at 1359

This rational is not applicable to the "finished merchandise" exclusion as applied to the mounts. The mounts are like or akin to the solar panels, are parts of the Eco Fasten Solar panel system. The mounts, like the solar panels, are fully assembled and complete at the time of importation, meet the "finished merchandise" definition as "parts" that are fully and permanently

assembled at the time of entry, and do not meet the "final finished merchandise kit" exclusion.

Moreover, as the exemplars to the finished merchandise exclusion illustrate, the aluminum windows with glass, doors with glass or vinyl and solar panels are sold and used as finished merchandise. They function in downstream structures – a building, a house, or a solar panel system.

Similarly, these are offered for sale as finished merchandise as demonstrated by Exhibits 6 and 7 to the CCM scope request (P.R. 10) and are installed, like solar panels, and defined by the "finished merchandise" exclusion as parts of a solar panel mounting system.

### C. The Commerce three-part analysis in the Meridian Second Remand Determination and applied by Commerce in the CCM scope decision erroneously merged the "final finished merchandise kit" exclusion into the "finished merchandise" exclusion based on *Shenyang Yuanda 2015* decision

Defendant cited the three-part analysis created and applied by Commerce in the Meridian Second Remand Decision and applied in the CCM Scope Decision to hold that the aluminum extrusions in the mounts are withing the scope of the Order as subassemblies, stating (Defendant's brief at 10-11):

> Second, Commerce recognized a distinction in the scope between "a subassembly which is covered by the general scope language, and an assembly which satisfies the finished merchandise exclusion." *Id.* at 21. The term "subassemblies," Commerce found, is
>
> > broadly defined in the scope as "<u>partially assembled merchandise</u>[,]" which we understand to be distinct from products which are "<u>fully and permanently and completed</u>" **finished** merchandise. In other words, a subassembly could also be described as an intermediate product or any <u>other partially assembled</u> product that is less than the <u>full, permanent, and completed</u> **final** <u>finished</u> intermediate product which satisfies the finished merchandise exclusion.
>
> Third, in evaluating the subassemblies language in the general scope language, Commerce recognized that "there is a specific reference to

the finished goods kit exclusion, which means that products which satisfy the subassemblies language may, nonetheless, be excluded under the finished goods kit exclusion. However, the subassemblies language does not similarly reference the finished merchandise exclusion." *Id.* at 22. "The lack of such express language," Commerce concluded, "supports an interpretation that products which satisfy the subassemblies language cannot be excluded under the finished merchandise exclusion." *Id.*

Thus, Commerce found, upon analyzing the scope language and structure as a whole, a delineation in the scope among three categories of products: (1) *Subassemblies*: aluminum extrusion components that are already attached to form subassemblies, *i.e.*, assembled, upon importation (not excluded); (2) *Finished goods kits*: aluminum extrusion components in a packaged combination of parts that are unassembled at the time of importation, and that will undergo assembly upon importation into a final finished good (excluded under the finished goods kit exclusion); and (3) *Finished merchandise*: merchandise containing extrusions as parts that are fully and permanently assembled and completed at the time of entry (excluded under the finished merchandise exclusion), which does not include a subassembly. *Id*. at 25.

Ultimately, Commerce found that the Type B handles were "subassemblies" or "parts for" final finished goods which will "becom[e] part of a larger whole," and that they did not meet the criteria for the finished merchandise exclusion. *Id.* at 30-31 (quoting Orders at 30,651).

The rationale herein, however, is inconsistent, with that taken by Commerce in its Side Mount Valve Controls Scope Ruling.[4] Side mount valve controls (SMVC's) were used in pumping apparatuses that were, after importation, installed in or on fire engines. The kits in their imported condition contained aluminum and non-aluminum parts, consisting of "a chrome-plated die cast zinc T-handle, a hard coat anodized aluminum traveling rod, an aluminum bushing

---

[4] See Commerce's memorandum regarding: Final Scope Ruling on Side Mount Valve Controls, dated October 26, 2012 ("SMVCs Scope Ruling"); see also Commerce's memorandum regarding: Antidumping Duty (AD) and Countervailing Duty (CVD) Orders: Aluminum Extrusions from the People's Republic of China (PRC), Initiation and Preliminary Scope Ruling on Side Mount Valve Controls, dated September 24, 2012.

housing with two bronze split bushings, [and] three spring steel rod-locking plates." Commerce analyzed whether the SMVC kits was a subassembly that entered the United States as a "finished goods kit." Department found that:

1) the SMVC kit contained all the parts necessary to assemble a complete SMVC,

2) all parts and hardware of the SMVC were fully fabricated and required no further finishing or fabrication prior to being assembled, and

3) once assembled, the SMVC was ready for use in conjunction with the downstream product upon installation.

Based on this information, the Department ruled that the SMVC kits at issue met the exclusion criteria for subassemblies that enter the United States as "finished goods kits." The critical factor in the case, however, was that Department modified its previous position as to what constituted "finished merchandise" or a "finished goods kit." In the SMVC Ruling the Department explained its concern that its prior position would lead to unreasonable results. The Department determined that an interpretation of "finished goods kit" that require all the parts to assemble the ultimate downstream product could lead to absurd results, particularly when the ultimate downstream product was, for example, a fire truck. The Department was of the opinion that its original interpretation would expand the scope of the Orders to include articles well beyond the intention of the Orders, which was to cover only aluminum extrusions. The Department, therefore, reasonably interpreted the "finished goods kit" exclusion to include "subassemblies" that enter the United States as "finished goods" or "finished goods kits," so long as they require no further "finishing" or "fabrication" prior to their use.

The error in this analysis, however, is that Commerce did not apply the "finished

merchandise" exclusion to determine that the mounts were parts for a solar panel system assembled after importation which mounts/parts were "fully and permanently assembled and complete at the time of entry."  This was later followed in a number cases, including *Valeo Inc., Valeo Engine Cooling Inc., and Valeo Climate Control Corp. v. United States,* No. 12-00381 (May 14, 2013) (Valeo Final Remand Redetermination, addressing Commerce's findings in the Memorandum regarding: Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China -- Final Scope Ruling on Valeo's Automotive Heating and Cooling Systems, dated October 31, 2012 ("Auto Heating/Cooling Systems Scope Ruling").  The Valeo Final Remand Redetermination was affirmed by the Court of international Trade.  *See Valeo, Inc., et al v. United States,* CIT No. 12-00381. The Stator Assembled Motor Cases Scope Ruling[5] and the Foreline Hose Assemblies scope decision.[6]

Defendant asserts that Commerce's determination that the Type B handles were subject to the Orders was affirmed by this Court in *Meridian Products LLC v. United States,* Court No. 13-00246, 2020 WL 1672840 at *2 (Ct. Int'l Trade April 6, 2020) (*Meridian V*).  Def. Br. at 11.

The court in Meridian Products did not provide any reasoning to affirm the Second remand determination as precedential authority other than stating the Commerce remand was affirmed, neither Commerce or the court in *Meridian Products LLC v. United States,* Court No. 13-00246, 2020 WL 1672840 (Ct. Int'l Trade April 6, 2020) addressed the issues involved herein as to the omission of the word parts from the finished merchandise exclusion the addition of the word "final" and that the mounts met the definition of "finished merchandise."

---

[5] *See* Memorandum entitled "Final Scope Ruling on Motor Cases, Assembled and Housing Stators Summary", dated November 19, 2012 ("Assembled Motor Cases Scope Ruling").

[6] *See* Memorandum, "Final Scope Ruling on Agilent Technologies, Inc.'s Foreline Hose Assembly," dated August 27, 2015 (Foreline Hose Assembly Final Scope Ruling)

**IV.    As Commerce ruled the aluminum extrusions in the mounts are subject to the Order but did not respond to CCM's argument that the non-extrusion components of the mounts were excluded from the Order, CCM's arguments to remand and the violation of procedural due process were valid, defendants contrary arguments must be dismissed, but the defendant's concession accepted**

Commerce concluded in its scope decision (P.R. 29 at 19):

> We find that CCM's solar mounts consist of aluminum extrusion components that are attached to form subassemblies; but, because they lack the necessary components that would allow them to function as a solar panel mounting system (*i.e.,* a Rock-It Slide, a level nut cap, a Rock-It 3.0 Coupling, a load bearing foot, and a Rock-It 3.0 Array Skirt), they are not "fully and permanently assembled and completed at the time of entry," and, thus, do not qualify for the finished merchandise exclusion.

Commerce omitted from this statement their prior factual determination that the mounts consisted of extrusions and non-extrusions which formed subassemblies and did not directly respond to Plaintiff's argument the non-extrusions were excluded from the order. Hence, the CCM Scope Decision did not respond directly to CCM's arguments and Plaintiff's arguments about remand and constitutionality were justified. As Defendant conceded in its brief the Order did not apply to the non-extrusion components of the mounts as subassemblies.

Should this Court conclude that CCM's Rock-It Mounts are subject to the AD Order on aluminum extrusions from China because they are no "finished" subassemblies, then in accordance with the language of the Order, the non-aluminum extrusion components of found on the Rock-It Mounts are excluded. *See* 76 FR 30,650-51.

**V.    Conclusion**

Commerce in the CCM scope decision modified the language of the aluminum extrusion Order to omit the word "parts" as applied to the mounts as "parts" of the solar panel mounting system and added the word "final" to the "finished merchandise" determining such changes are

{0175943.DOCX;1}                                14

contrary to the court decisions that Commerce may not modify or unreasonably interpret the scope of the Orders.

CCM requests that this case be remanded to Commerce to issue a scope determination conforming to the definition of the "finished merchandise" as applied to the mounts.

Dated: June 2, 2021
/s/ George R. Tuttle Sr.
George R. Tuttle, Sr.
Law Offices of George R. Tuttle
A Professional Corporation
3950 Civic Center Drive, Ste 310
San Rafael, California 94903
Direct: (415) 288-0425
Firm: (415) 986-8780
*Email: george.tuttle.sr@tuttlelaw.com*
*Attorney for Plaintiff*
*China Custom Manufacturing, Inc.*
*   and Greentec Engineering LLC*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JUDGE STEPHEN A. VADEN

| | |
|---|---|
| CHINA CUSTOM MANUFACTURING, INC. and GREENTEC ENGINEERING LLC, <br><br>　　　　　　　　　　Plaintiffs <br><br>　　　　v. <br><br>UNITED STATES, <br>　　　　　　　　　　Defendant <br><br>and <br><br>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br><br>　　　　　　　　Defendant-Intervenor | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : Court No: 20-00121 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## CERTIFICATION OF COMPLIANCE

I, GEORGE R. TUTTLE, SR, of Law Offices of George R. Tuttle, A Professional Corporation, who is the attorney responsible for Plaintiff's Reply to Defendant and Defendant-Intervenor response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum compiles the with word count limitation under the Court's chamber procedures and contains 4,386 words.

　　　　　　　　　　　　　　　　　　/s/ George R. Tuttle Sr.
　　　　　　　　　　　　　　　　　　George R. Tuttle, Sr.
　　　　　　　　　　　　　　　　　　Law Offices of George R. Tuttle
　　　　　　　　　　　　　　　　　　A Professional Corporation
　　　　　　　　　　　　　　　　　　3950 Civic Center Drive, Ste 310
　　　　　　　　　　　　　　　　　　San Rafael, California 94903
　　　　　　　　　　　　　　　　　　Direct: (415) 288-0425
　　　　　　　　　　　　　　　　　　Firm: (415) 986-8780
　　　　　　　　　　　　　　　　　　Email: george.tuttle.sr@tuttlelaw.com
　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*
　　　　　　　　　　　　　　　　　　　　*China Custom Manufacturing, Inc. and*
　　　　　　　　　　　　　　　　　　　　*Greentec Engineering LLC*