Slip Op. No. 21-163

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CHINA CUSTOM MANUFACTURING, INC. <br><br> AND <br><br> GREENTEC ENGINEERING LLC, <br><br>      *Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br>      *Defendant,* <br><br>   and <br><br> ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br><br>      *Defendant-Intervenor.* | Before: Stephen Alexander Vaden, Judge <br><br> Court No. 1:20-cv-00121 |

## OPINION AND ORDER

[Sustaining Commerce's final scope determination.]

Dated:  December 6, 2021

George R. Tuttle, III, Law Offices of George R. Tuttle, A.P.C., of San Rafael, California, for Plaintiffs. With him on the brief was George R. Tuttle, Sr.

Patricia McCarthy, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for Defendant United States. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Commercial Litigation Branch, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Jamie Shookman, Trial Attorney, Commercial Litigation Branch, and Savannah Rose Maxwell, Of Counsel, Office of

Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

<u>Robert E. DeFrancesco</u>, Counsel for Aluminum Extrusions Fair Trade Committee, Wiley Rein, LLP, of Washington D.C., for Defendant-Intervenor. With him on the brief were <u>Alan H. Price</u> and <u>Elizabeth S. Lee</u>.

**Vaden, Judge:** This action involves a challenge to a U.S. Department of Commerce (Commerce or the Department) scope determination for the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Dep't of Com. May 26, 2011) (AD Order); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Dep't of Com. May 26, 2011) (CVD Order) (collectively, the Orders). Plaintiffs China Custom Manufacturing, Inc. (CCM) and Greentec Engineering, LLC (together, Plaintiffs), challenge a scope ruling in which Commerce determined that Plaintiffs' ROCK-IT 3.0 solar roof mountings (solar mounts) fall within the scope of the Orders. First Am. Compl. (Compl.) ¶ 1, ECF No. 10.

Before the Court is Plaintiffs' Motion for Judgment on the Agency Record, in which Plaintiffs argue that the Final Scope Ruling is contrary to law and that Commerce should have excluded the solar mounts from the scope of the Orders. *See* Pls.' Mot. for J. on the Agency R. (Pls.' Mot.), ECF No. 31-1. Commerce and Defendant-Intervenor Aluminum Extrusions Fair Trade Committee, a trade

association of U.S. producers of aluminum extrusions and a petitioner in the antidumping and countervailing duty investigations, oppose Plaintiffs' Motion. *See* Def.'s Resp. to Pls.' Mot. for J. on the Agency R. (Def.'s Resp.), ECF No. 35; Def.-Intervenor's Resp. to Pls.' Rule 56.2 Mot. for J. on the Agency R. (Def.-Intervenor Resp.), ECF No. 36. For the reasons set forth below, the Court affirms Commerce's determination.

## I.   BACKGROUND

The merchandise at issue in this case is Rock-It 3.0 solar roof mounts sold by CCM. The Rock-It 3.0 mounts are solar panel mounts that are used with other parts in a downstream structure, the EcoFasten Rock-It System 3.0, to mount solar panels on a roof. J.A. at 1202. Plaintiffs' Scope Request specified that the solar mounts contain "aluminum exclusion [*sic*] parts . . . fabricated from an aluminum alloy corresponding to Alloy Series 6 published by the Aluminum Association and are machined to precise specifications." J.A. at 1015. The EcoFasten Rock-It System 3.0 consists of the Rock-It 3.0 solar mounts, the Rock-It slide, the level nut cap, the Rock-it 3.0 coupling and load bearing foot, and the Rock-It 3.0 array skirt. J.A. at 1202.

According to the Scope Request, the solar mounts consist of aluminum extrusion components that are fastened together with non-aluminum components. J.A. at 1010. The solar mounts are "fully and permanently assembled and complete at the time of entry [and] ready for installation as EcoFasten Rock-It 3.0 solar panel mounting system, a downstream structure." *Id.*

### A.  Relevant Scope Proceedings

Commerce issued antidumping and countervailing duty orders on aluminum extrusions from China in May 2011.  *AD Order*, 76 Fed. Reg. 30,650; *CVD Order*, 76 Fed. Reg. 30,653.  The scope of the Orders included:

> The merchandise covered by the Orders is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents). Specifically, the subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 contains not less than 99 percent aluminum by weight. The subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 contains manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. The subject merchandise is made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 contains magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight. The subject aluminum extrusions are properly identified by a four-digit alloy series without either a decimal point or leading letter. Illustrative examples from among the approximately 160 registered alloys that may characterize the subject merchandise are as follows: 1350, 3003, and 6060.

> Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods. Aluminum extrusions that are drawn subsequent to extrusion (drawn aluminum) are also included in the scope.

Aluminum extrusions are produced and imported with a variety of finishes (both coatings and surface treatments), and types of fabrication. The types of coatings and treatments applied to subject aluminum extrusions include, but are not limited to, extrusions that are mill finished (i.e., without any coating or further finishing), brushed, buffed, polished, anodized (including brightdip anodized), liquid painted, or powder coated. Aluminum extrusions may also be fabricated, i.e., prepared for assembly. Such operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun. The subject merchandise includes aluminum extrusions that are finished (coated, painted, etc.), fabricated, or any combination thereof.

Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

76 Fed. Reg. at 30,650-51. The Orders also included exclusions to the scope. The

exclusion language explains:

The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods

> containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the Orders merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the Orders merely by including fasteners such as screws, bolts, etc. in the packaging of an aluminum extrusion product.

76 Fed. Reg. at 30,651.  Since the Orders were first issued, Commerce's interpretation of the scope has evolved extensively.  In addition to the numerous scope rulings issued, the application of the finished merchandise exclusion in the Orders has been heavily litigated.

In one of the earliest scope rulings involving the Orders, Commerce examined whether a solar panel mounting system was included within the scope.  In the Clenergy Solar Panel Mounting Systems Scope Ruling, Commerce examined whether an unassembled solar panel mounting system consisting of both aluminum extrusions and non-aluminum components would be excluded from the Orders under the finished merchandise exclusion.  *See* Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems, A-570-967, at 2 (Oct. 31, 2012), https://enforcement.trade.gov/download/prc-ae/scope/21-Clenergy-Solar-Panel-Mounting-Systems-20121031.pdf (last visited Dec. 6, 2021).   The solar panel

mounting system included all parts necessary to mount a solar panel on a roof. *Id.* Commerce concluded that, because the entry at issue contained all the parts necessary to assemble a finished product for mounting solar panels, the solar panel mounting system was excluded from the Orders under the finished merchandise exclusion. *Id.*

That same year, Commerce revised the way it determined whether a given product was finished merchandise or a finished goods kit in the Side Mount Valve Controls (SMVC) Scope Ruling. In this scope inquiry, Commerce examined whether certain side-mount valve controls used in pumping apparatuses that attach to fire engines could be excluded from the Orders under the finished merchandise exclusion. Final Scope Ruling on Side Mount Valve Controls, A-570-967, at 1 (Oct. 26, 2012), https://enforcement.trade.gov/download/prc-ae/scope/27-Innovative%20Controls-Side-Mount-Valve-Controls-20121026.pdf (last visited Dec. 6, 2021). Petitioners argued that, although the entry did not include all the parts of the downstream product — the fire engine — the side mount valve controls were fully assembled and complete products and therefore should qualify as excluded finished merchandise. *Id.* In its scope ruling, Commerce reexamined its prior interpretation of the finished merchandise and finished goods kit exclusions, which required all components of the downstream product be included in order to qualify for the exclusions. *Id.* Commerce determined the prior interpretation of the exclusions could inadvertently expand the scope of the order. It instead identified a new category of entries identified as

subassemblies.  *Id.*  Commerce's updated scope ruling defined subassemblies as "partially assembled merchandise" that could be excluded from the Orders provided they enter the United States as finished merchandise requiring no further finishing or fabrication.  *Id.*

Commerce's application of the subassembly test as applied to the finished merchandise exclusion was affirmed one year later in the Valeo Final Remand Redetermination.  *See* Final Results of Redetermination Pursuant to Court Remand Aluminum Extrusions from the People's Republic of China, *Valeo, Inc., et al v. United States,* No. 12-00381, at 8 (May 14, 2013).  The products at issue were two distinct types of automotive heating and cooling components.   In this remand redetermination, Commerce applied the subassemblies test the Department articulated in the SMVC Scope Ruling.  *See id.*  Commerce concluded that "at the time of importation, the products at issue contain all of the necessary components required for integration into a larger system[,]" the automotive unit, and thus qualified as subassemblies excluded from the Orders under the finished merchandise exclusion.  *Id.*

The subassembly test as applied to the finished merchandise exclusion remained consistent through Commerce's scope rulings until the *Shenyang* case in 2015.  *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351 (Fed. Cir. 2015).  In *Shenyang*, Commerce examined whether curtain wall units, which fastened together to form a completed curtain wall, should be excluded from

the Orders under the finished merchandise exclusion.  *Id*. at 1353-54.  Plaintiff Shenyang argued the individual curtain wall units were finished merchandise because each unit was fully assembled and complete on entry to later be installed in a downstream product — a curtain wall.  *Id*. at 1358.  After a series of appeals and remands, the Court of Appeals for the Federal Circuit held that curtain wall units were subassemblies because they required installation into a downstream structure. *Id*. at 1358-59.  The Court further held that subassemblies could *never* meet the conditions to be excluded under the finished merchandise exclusion because subassemblies are parts for a finished product and not the finished product itself.  *Id*. at 1359.  Consequently, Commerce adopted an updated interpretation of the finished merchandise exclusion in line with the Federal Circuit's holding.  *See id*.

In 2019, Commerce's updated interpretation of the finished merchandise exclusion was affirmed by this Court in the Meridian Door Handles Second Remand Redetermination.  *See Meridian Products LLC v. United States,* No. 13-00246, 2020 WL 1672840 at *2 (CIT 2020) (*Meridian*).  The products at issue in *Meridian* were door handles for ovens that Meridian described as fully and permanently assembled and complete at the time of entry.  *See id*.  In the final redetermination, Commerce found that the door handles were subassemblies, as they were parts for a final finished good — the oven — not the finished good itself.  *Id*.  Having determined the handles were subassemblies, Commerce determined they did not meet the criteria for

the finished merchandise exclusion in the Orders and thus were subject to the duties. *Id.*

## B. The Scope Ruling in Question

On May 10, 2019, Plaintiffs submitted a request for Commerce to issue a scope ruling that its Rock-It 3.0 solar mounts are not covered by the scope of the Orders. Commerce rejected this scope request for failing to include certain information necessary for Commerce to make a ruling. Along with the rejection, Commerce also included a Supplemental Questionnaire to Plaintiffs requesting the needed additional information. On October 4, 2019, Plaintiffs resubmitted their request that Commerce determine whether their solar mounts are subject to the Orders. *See* J.A. at 1009. Commerce issued an additional Supplemental Questionnaire to Plaintiffs on December 30, 2019, to clarify information contained in the October 4, 2019 submission. *Id.* at 1195. Plaintiffs responded to Commerce's Supplemental Questionnaire on February 13, 2020. *Id.* at 1202.

In its Scope Request and Supplemental Questionnaire responses, Plaintiffs described the solar mounts as "finished merchandise containing aluminum and non-aluminum parts." *Id.* at 1010, 1206. The mounts are further identified as "fully and permanently assembled and complete at the time of entry ready for installation into the EcoFasten Rock-It 3.0 solar panel mounting system." *Id.* at 1010. Plaintiffs argued the solar mounts qualified as finished merchandise under the plain meaning of the finished merchandise exemption in the Orders because the solar mounts are

imported fully and permanently assembled and require no further assembly. *Id*. at 1010-13. As such, Plaintiffs asserted the solar mounts meet the requirements for the finished merchandise exclusion in the scope of the Orders. *Id*. at 1027.

As part of its administrative inquiry, Commerce examined Plaintiffs' Scope Request, Supplemental Questionnaire responses, and its previous scope rulings. *Id*. at 1225. Commerce found the description of the products, the scope language, and Commerce's prior determinations to be dispositive as to whether the solar mounts are subject merchandise. *Id*. Commerce determined that, because the solar mounts are intermediary products that require incorporation into a downstream product to function, the solar mounts meet the definition of a subassembly as articulated and affirmed in the Meridian Door Handles Second Remand. *See id*. at 1212. Thus, Commerce issued its Final Scope Ruling on May 14, 2020, in which it found that the solar mounts are within the scope of the Orders and therefore subject to the duties the Orders imposed. *See id*.

## C. The Present Case

Plaintiffs commenced this action on June 11, 2020, seeking to overturn the scope decision. Summons, ECF No. 1. Before any substantive briefing on the issues, Plaintiffs filed a Motion to Remand the case to Commerce to supplement the administrative record. Pls.' Mot. to Remand, ECF No. 25. On December 8, 2020, the

Court[1] denied Plaintiffs' Motion to Remand without prejudice to Plaintiffs' renewal of certain arguments in their Motion for Judgment on the Agency Record. Order at 3, ECF No. 30. On December 14, 2020, Plaintiffs filed their Motion for Judgment on the Agency Record. Pls.' Mot., ECF No. 31-1. In their Motion, Plaintiffs raise three arguments: first, that this Court should find that the solar mounts are "finished merchandise" as defined by the Orders' scope and therefore excluded from the Orders; second, that the Court should remand the case to Commerce with instructions that non-aluminum extrusion components that make up subassemblies are excluded from the Orders; and third, that alternatively, the Court should remand the case to Commerce to supplement the administrative record. *Id.* at 1. Defendant and Defendant-Intervenor responded on April 2, 2021 and May 5, 2021, respectively. Def.'s Resp., ECF No. 35; Def-Intervenor Resp., ECF No. 36.

The Court held oral argument on August 17, 2021. Counsel for all parties attended. The Court first addressed the issue of whether the non-aluminum extrusion components of the mounts were excluded from the Orders' scope. Tr. of Oral Arg. 6:9-24, ECF No. 43. In response to the Court's questions, Commerce confirmed "the scope does not include the non-aluminum extrusion components of subassemblies or subject kits." *Id.* at 7:5-6. Having heard Commerce's response, Plaintiffs' counsel confirmed agreement that there was no longer any dispute and

---

[1] This case was originally assigned to The Honorable Mark A. Barnett, who ruled on the Plaintiffs' Motion to Remand to the Department of Commerce. Order, ECF No. 31. On January 8, 2021, the case was reassigned by then-Chief Judge Stanceu from Judge Barnett to Judge Vaden. Order, ECF No. 32.

that the non-aluminum extrusion components of the mount would not be subject to duties under Commerce's Orders. *Id.* at 9:3-6. The Court then turned to Plaintiffs' argument to remand the case to Commerce to supplement the administrative record. *Id.* at 9:10-25, 10:1-4. Specifically, Plaintiffs argued for remand to supplement the record to ensure the "*Meridian* second remand decision is a part of the record." *Id.* at 10:6-7. At the Court's request, the Government confirmed the *Meridian* second remand decision is in the record. *Id.* at 10:8-10. Plaintiffs agreed that the issue of the state of the record was also no longer a live dispute. *Id.* at 10:5-7. Therefore, the only remaining contested issue before the Court is whether the solar mounts fall within the scope of the Orders.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930. 19 U.S.C. § 1516a(a)(2)(B)(vi). Section 516A provides for judicial review of a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing order." *Id.* This type of determination is known as a "scope ruling." 19 C.F.R. § 351.225.

Scope rulings are "highly fact-intensive and case-specific determination[s]." *Global Commodity Grp., LLC v. United States,* 709 F.3d 1134, 1138 (Fed. Cir. 2013) (quoting *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)).

As such, the Court "grant[s] significant deference to Commerce's interpretation of a scope order." *Id.*  The Court must uphold a scope ruling unless it finds it to be "unsupported by substantial evidence on the record or otherwise not in accordance with the law." *Sango Int'l, L.P. v. United States,* 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  "[T]he court may not substitute its judgment for that of the [agency] when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Goldlink Indus. Co. v. United States,* 431 F. Supp. 2d 1323, 1326 (CIT 2006) (citations omitted) (second alteration in original).

## III.   DISCUSSION

As outlined above, there no longer remain any contested questions regarding the exclusion of the mounts' non-aluminum extrusion components or the sufficiency of the administrative record. *See supra* Part I.  Plaintiffs' only remaining argument is that the solar mounts at issue should be excluded from the Orders under the finished merchandise exclusion.  Pls.' Mem. of Law in Supp. of Pls.' Rule 56.2 Mot. for J. on the Agency R. (Pls.' Mem.) at 21, ECF No. 31-2; Tr. Of Oral Arg. 11:12-18. Commerce argues that the solar mounts do not qualify as finished merchandise and therefore should not be excluded from the Orders.  *See* Def.'s Resp., ECF No. 35.  After examining the plain language of the Orders and the descriptions contained in Plaintiffs' Scope Request and Supplemental Questionnaire responses, Commerce found the solar mounts to be covered by the Orders' plain language.  J.A. at 1212.

Plaintiffs' position is that the solar mounts are finished merchandise and therefore covered under the Orders' finished merchandise exclusion.   During oral argument in this case, Plaintiffs confirmed that they are "making only a finished merchandise argument," not an argument for exclusion as a finished goods kit.   Tr. of Oral Arg. 11:5-14.   Although Plaintiffs acknowledge that the solar mounts do not meet Commerce's present interpretation of what constitutes finished merchandise, Plaintiffs argue that Commerce impermissibly modified its interpretation of the finished merchandise exclusion.   *See* Pls.' Mem. at 30.   Therefore, Plaintiffs argue that Commerce's actions were arbitrary, capricious, and contrary to law in determining that the solar mounts were not excluded from the Orders.   *Id.*

Commerce argues that the solar mounts meet the definition of a subassembly as defined in the Orders and when considered alongside Commerce's prior scope proceedings.   Def.'s Resp. at 19.   Based on information in the administrative record, Commerce determined that, after importation, the solar mounts are combined with additional parts to form the Rock-It System 3.0.   *Id.* at 22; J.A. at 1217.   Accordingly, Commerce found that, despite the solar mounts' being fully assembled at the time of entry, they are subassemblies because the solar mounts are only intermediary products that require incorporation into a downstream product — the solar panel mounting system.   *See* Def.'s Resp. at 22-23.

The question before the Court is whether substantial evidence supports Commerce's determination that the solar mounts do not meet the requirements for

the finished merchandise exclusion and the mounts are therefore included within the scope of the Orders.   After reviewing the scope language, the Plaintiffs' Scope Request, the Plaintiffs' Supplemental Questionnaire responses, and Commerce's prior scope rulings, the Court agrees that the solar mounts are subassemblies — not excludable as finished merchandise — and affirms Commerce's determination that the solar mounts are included within the scope of the Orders.

## A. The Scope Language in the Orders

The relevant scope language reads:

> The merchandise covered by the Orders is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents).
>
> . . . .
>
> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

76 Fed. Reg. at 30,650-51.  Plaintiffs do not contest that the solar mounts fall within the plain language of the Orders because "they are composed of aluminum extrusions from an aluminum alloy corresponding to the Aluminum Association series 6 alloy that are machined and fabricated."  J.A. at 1226.  Instead, Plaintiffs argue the solar mounts meet the requirements to be excluded under the finished merchandise exclusion.

Despite acknowledging the solar mounts meet Commerce's updated definition of a subassembly, which cannot be excluded under the finished merchandise exclusion, Plaintiffs nonetheless argue the solar mounts meet the plain language definition of finished merchandise.  See Pls.' Mem. at 29-30, ECF No. 31-2.  The finished merchandise exclusion reads:

> The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

76 Fed. Reg. at 30,651.  In order to apply the product description from the Scope Request to the relevant finished merchandise exclusion language, Commerce evaluated the scope language while considering the series of scope rulings that followed the Orders.  J.A. at 1225.  Specifically, Commerce applied its updated interpretation of the finished merchandise exclusion as first outlined in *Shenyang* and later expounded on in *Meridian*.  *Id.* at 1226.  Under the updated interpretation, affirmed in the Meridian Redetermination, subassemblies are not finished

merchandise but rather parts later to be installed in a downstream product; and, as such, subassemblies are subject to the scope of the Orders.  *See id.* at 1212.

### B. The Development of the Finished Merchandise Exclusion

Plaintiffs' primary argument is that the scope language of the Orders explicitly excludes finished merchandise and that the solar mounts consisting of aluminum extrusions connected by non-aluminum extrusion parts qualify as finished merchandise.  Pls.' Mem. at 22-23.  Plaintiffs argue that the solar mounts meet the "plain meaning of the finished merchandise exclusion . . . because they are fully and permanently assembled and complete at the time of entry, and ready for installation in the downstream structure: a rooftop mounted solar panel system.*"  Id.* at 23. Plaintiffs contend that Commerce's determination was arbitrary, capricious, and contrary to law because Commerce "impermissibly[] modif[ied] its position on what constitutes finished merchandise for purposes of the finished merchandise exclusion provided in the Orders.*"  Id.* at 21.

All parties have acknowledged that "the question of what constitutes finished merchandise has changed and evolved over time and has been the subject [of] numerous scope ruling[s] and litigation."  Pls.' Mem. at 9; *see also* Def.'s Mot. at 4. Over the past decade, Commerce, this Court, and the Court of Appeals for the Federal Circuit have all explored the parameters of the finished merchandise exclusion in the Orders.  Decisions in previous cases that have progressed from a Commerce scope ruling, through the Court of International Trade, to the Federal Circuit, have

provided this Court with valuable insights to guide its examination of the finished merchandise exclusion.

Although it initially recognized subassemblies as finished merchandise for purposes of the exclusion, Commerce reevaluated its interpretation of the finished merchandise exclusion in 2015 following a series of appeals and remands initiated by Shenyang Yuanda Aluminum Industry Engineering Company (Shenyang).    In *Shenyang*, the Federal Circuit held that "parts for" and "subassemblies for" a finished product cannot qualify for the finished merchandise exclusion.    776 F.3d at 1358. Shenyang submitted a Scope Request to Commerce seeking to confirm whether curtain wall units and other parts of a curtain wall system are subject to the Orders. *Id*. at 1353.    It argued that the curtain wall units were finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and complete at the time of entry and therefore should be excluded from the scope of the Orders.  *Id*. at 1358.

In the course of its inquiry, Commerce determined that curtain wall units were "designed to be attached to other units to eventually form a completed curtain wall" and that "an individual curtain wall unit has no consumptive or practical use because multiple units are required to form the wall of a building."  *Id*.  Because the individual curtain wall units were found to be a "part or subassembly" of a completed curtain wall, the Federal Circuit held they could not qualify as a finished product.  *Id*. at 1359.

Although the Federal Circuit's 2015 *Shenyang* decision triggered a reinterpretation of the finished merchandise exclusion by Commerce, subsequent appeals in the case provided further direction regarding the definition of subassemblies. *See Shenyang Yuanda Aluminum Industry Engineering Co. v. United States,* 918 F.3d 1355 (Fed. Cir. 2019). After a series of appeals and redeterminations, in 2019, the Federal Circuit affirmed Commerce's determination that the Orders "exclud[e] 'subassemblies' only if they are 'imported as part of the finished goods "kit"' as defined." *Id.* at 1367; *see also* 76 Fed. Reg. at 30,651. Because the curtain wall units were subassemblies but not part of a finished goods kit, the curtain wall units could not be excluded from the scope of the Orders. *Shenyang,* 918 F.3d at 1367. Most relevant to the present matter, the Federal Circuit also held that, for an item to qualify for the finished merchandise exclusion, the item must "be ready for installation 'as is.'" *Id.* Shenyang's administrative record indicated the curtain wall units being imported would not complete a curtain wall because they did not include all items necessary for installation. *See id.* at 1367-68. The curtain wall units thus did not qualify for the finished merchandise exclusion. *Id.*

Following the 2015 *Shenyang* case, Commerce reinterpreted the finished merchandise exclusion to conform with the Federal Circuit's holdings. *See Shenyang,* 776 F.3d at 1358. In 2020, the courts affirmed Commerce's updated interpretation of the finished merchandise exclusion following a series of appeals initiated by Meridian Products. *See Meridian Products L.L.C. v. United States,* 125 F.Supp.3d 1306 (CIT

2015); *Meridian,* 180 F.Supp.3d 1283 (CIT 2016); *Meridian,* 851 F.3d 1375 (Fed. Cir.

2017); *Meridian,* 890 F.3d 1272 (Fed. Cir. 2018); *Meridian,* 2020 WL 1672840 (CIT

2020).[2]

In its initial appeal, Meridian contested a 2013 Final Scope Ruling from

Commerce that found certain kitchen appliance door handles to be within the scope

of the Orders. *See Meridian,* 125 F.Supp.3d at 1308.   Meridian argued the kitchen

appliance door handles at issue should be excluded from the Orders either because

the handles were not included within the Orders' general scope or because they

qualified under the Orders' finished merchandise exclusion. *See id.*   In 2015, this

Court held that Commerce did not base its conclusion that the handles were subject

merchandise on a reasonable interpretation of the scope language. *Id.* at 1314.   The

Court further found Commerce's determination "fail[ed] to demonstrate the

reasonableness of the Department's conclusion that the . . . handles do not satisfy the

requirements of the finished merchandise exclusion when the scope language setting

forth that exclusion is interpreted according to plain meaning.*"* *Id.* at 1316.   After

remand, consistent with this Court's opinion, Commerce found the handles to be

outside the scope of the Orders because there is no general scope language that covers

such products. *Meridian,* 180 F.Supp.3d at 1289.   Commerce did not address whether

the handles were excluded under the finished merchandise exclusion. *Id.*   Defendant-

---

[2] Rather than list the cases in this string cite in accordance with the Order of Authorities, the cases are listed in chronological order to illustrate Meridian's progression through the appeals process.

Intervenor Aluminum Extrusions Fair Trade Committee then appealed Commerce's Remand Redetermination.

On appeal, the Federal Circuit addressed whether the general scope language in the Orders included the appliance door handles. *See Meridian,* 890 F.3d at 1278-82. The Federal Circuit reversed this Court's order, finding that the handles were in fact within the Orders' general scope. *Id.* The Federal Circuit did not address the issue of whether the handles were excluded as finished merchandise and instead "direct[ed] Commerce to address the question of whether the . . . handles are excluded from the scope of the antidumping and countervailing duty order as 'finished merchandise.'" *Id.* at 1281-82.

Commerce issued a Second Remand Redetermination in which it found, after analyzing the scope language and structure as a whole, a delineation in the scope among three categories of products: (1) subassemblies, (2) finished goods kits, and (3) finished merchandise. *See* Final Results of Second Redetermination Pursuant to Court Remand at 23, *Meridian Products L.L.C. v. United States,* 2020 WL 1672840 (CIT 2020) (No. 13-00246). Commerce first recognized that subassemblies, defined as aluminum extrusion components that are attached by non-aluminum parts, are included in the Orders. *Id.* Second, applying the updated interpretation of the finished merchandise exclusion post *Shenyang,* Commerce determined that, because the kitchen appliance door handles would be installed in downstream products, the handles were subassemblies. *Id.* Therefore, Commerce concluded, and this Court

affirmed, that "products which satisfy the subassemblies language cannot be excluded under the finished merchandise exclusion." *Id.* at 22; *see also Meridian,* 2020 WL 1672840, at \*2.

### C. Commerce's Scope Ruling Is Supported by Substantial Evidence

In this case, Plaintiffs argue the solar mounts meet the plain language definition of finished merchandise in the finished merchandise exclusion. Pls.' Mem. at 22. Relying on scope rulings predating the *Shenyang* and *Meridian* redeterminations, Plaintiffs argue the solar mounts meet the definition of finished merchandise because they are fully and completely assembled products at the time of entry. Pls.' Mem. at 22-28. Plaintiffs have conceded that they do not argue the solar mounts are part of a finished goods kit so that, if the solar mounts do not qualify as finished merchandise, they will come within the Orders' scope. Tr. of Oral Arg. 11:5-14.

Commerce's application of the finished merchandise exclusion has evolved since it first issued the Orders in 2011. In response to multiple Federal Circuit holdings, Commerce updated its interpretation of the finished merchandise exclusion to ensure conformity with the law. Finished merchandise, as defined in the Orders' scope, is merchandise that is fully and permanently assembled and complete at the time of entry. 76 Fed. Reg. at 30,651. The Federal Circuit has also held that there is a distinction between finished merchandise, which is excluded from the Orders, and subassemblies, which are included in the Orders. As articulated in *Shenyang,* 776

F.3d at 1358-59, and later expounded on in *Meridian*, 2020 WL 1672840, at *2, a subassembly is a *part* for a final finished good and intended to become part of a larger whole.

Despite this, Plaintiffs asks this Court to disregard Federal Circuit caselaw that has found subassemblies to be included in the scope of the Orders.  Pls.' Mem. at 28 (arguing Commerce failed to articulate a satisfactory rational explanation to preclude the finished merchandise exclusion from applying to subassemblies irrespective of prior caselaw).  Plaintiffs' argument can be essentially reduced to "Because an earlier scope request would have likely resulted in Plaintiffs receiving a different scope ruling, they should receive that ruling now."  Unfortunately for China Custom Manufacturing, timing matters; and neither this Court nor Commerce may disregard Federal Circuit precedent.  Commerce followed the relevant caselaw when making its scope determination and reached the only result it could consistent with the rulings of the Federal Circuit.  Substantial evidence therefore supports Commerce's determination, and the Court will not disturb it.

The Court and Commerce are guided and constrained by the series of cases elucidated above that have shaped the parameters of the finished merchandise exclusion.  In response to the Federal Circuit's holdings, Commerce appropriately modified its position on what constitutes finished merchandise for purposes of the exclusion.  As Commerce correctly found here, a subassembly cannot qualify as finished merchandise.  *See Shenyang*, 776 F.3d at 1358-59; *Meridian*, 2020 WL

1672840, at *2; J.A. at 1005-06.  A subassembly is a part for a final finished good intended to become part of a larger whole.  *Meridian*, 2020 WL 1672840, at *2.  As China Custom Manufacturing noted in its Supplemental Questionnaire responses, the solar mounts require "other components with which the mounts and the solar panels are used to form the solar panel mounting system," *ie.*, the finished merchandise.   J.A. at 1202.   The solar mounts themselves are not finished merchandise but rather a part or subassembly of the finished merchandise — the solar panel mounting system — and as such do not qualify as finished merchandise excluded from the scope of the Orders.   *Accord Shenyang*, 776 F.3d at 1358-59; *Meridian*, 2020 WL 1672840, at *2.

## IV.    CONCLUSION AND ORDER

The Court is left with a single contested issue — whether the solar mounts should be excluded from the scope of the Orders under the finished merchandise exclusion.   Because Commerce correctly applied the litany of Federal Circuit precedents interpreting the Orders to the solar mounts presented to it for review, substantial evidence supports Commerce's determination.   The Court therefore **AFFIRMS** Commerce's scope ruling and **DENIES** Plaintiffs' Motion for Judgment on the Agency Record.


/s/      Stephen Alexander Vaden
Judge

Dated: December 6, 2021
        New York, New York